# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2017, 10:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.H.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 20, 2017<br><br>Court of Appeals Case No.<br>90A04-1705-JV-1038<br><br>Appeal from the Wells Circuit Court<br><br>The Honorable Kenton W. Kiracofe, Judge<br><br>Trial Court Cause No.<br>90C01-1305-JD-23 |

**May, Judge.**

[1]  A.H. appeals the trial court's entry of a dispositional order that placed him in the Department of Correction. A.H. claims the court abused its discretion because Pierceton Woods Academy, where A.H. was already placed, "was the least restrictive setting available," (Br. of Appellant at 8), and his family could engage in therapy while he was there. Because the evidence in the record supports the trial court's decision being within its broad discretion, we affirm.

## Facts and Procedural History

[2]  In May 2013, the State filed a petition alleging thirteen-year-old A.H. was a delinquent for committing five counts of touching that would constitute Class B misdemeanor battery[1] if committed by an adult. Specifically, the State alleged A.H. touched the leg, butt, or breast of five female middle school students during school. The juvenile court found support for three of those allegations and adjudicated A.H. a delinquent based thereon.

[3]  In June 2013, following its adjudication, the juvenile court placed A.H. on probation for eighteen months. In November 2013, the State filed a petition to modify that disposition.[2] In March 2014, a motion for emergency change of A.H.'s residence was filed, and the court granted that motion on April 3, 2014.[3]

---

[1] Ind. Code § 35-42-2-1.

[2] The Chronological Case Summary ("CCS") indicates the court ruled on that petition in December 2013, but does not indicate how the court ruled. (*See* App. Vol. II at 4.)

[3] The CCS does not indicate where A.H. was moved or why. Nor does the record contain a petition or order regarding this move.

On April 16, 2014, the court changed A.H.'s address to "George Junior Republic." (App. Vol. II at 5.) Then, in June 2014, another emergency motion for change of residence was filed, but the record before us does not indicate what action the court took in response thereto. The trial court held dispositional review hearings thereafter, but the record before us does not indicate what the court found or ordered.

[4] On June 9, 2016, another emergency change of residence motion was filed, asking the court to move A.H. from "Resolute" to Pierceton Woods Academy because of a "lack of progress." (*Id.* at 35.) A few days later, the court ordered A.H. moved to Pierceton Woods Academy, where he was to receive treatment that should last between nine and twelve months. The treatment required A.H. to disclose all sexual touching and demonstrate by lie detector test that he had disclosed all sexual touching. A.H. failed two polygraph tests and, therefore, could not advance in the treatment, so the court held another review hearing to determine whether A.H. should remain at Pierceton Woods. After that hearing, the court moved A.H. from Pierceton Woods to the Department of Correction.

# Discussion and Decision

[5] We initially note that "the purpose of the juvenile process is vastly different from the criminal justice system." *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). The goal of juvenile proceedings is "*rehabilitation* so that the youth will not become a criminal as an adult." *Id.* (emphasis in original). To

facilitate this goal, juvenile courts have a number of options available for juvenile placement: "from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions[.]" *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987).

[6]     To assist juvenile courts in selecting amongst available placement alternatives, the Indiana Legislature has provided guidance regarding the option to be selected for any particular child:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6. Within those parameters, a juvenile court has discretion in choosing the disposition appropriate for each juvenile delinquent, *D.E. v. State*, 962 N.E.2d 94, 96 (Ind. Ct. App. 2011), and we review its disposition for an abuse of that discretion. *Id.* at 97. An abuse of discretion occurs if the court's decision is "clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[7] A.H. argues the juvenile court abused its discretion by not keeping him at Pierceton Woods, because he had rapport with his therapist, he and his parents were able to engage in family therapy, and it was closer to his home. While we appreciate the facts A.H. cites, those facts cannot, amidst the other facts in the record, demonstrate an abuse of discretion by the juvenile court.

[8] Brian Barnes, A.H.'s case manager at Pierceton Woods, testified that although A.H. has good rapport with this therapist and continues to disclose times when he has inappropriately touched others, the therapeutic team has "concern [about] the pace at which [A.H. is] going." (Tr. Vol. 2 at 6.) A.H. has been in the program eleven months, and the very soonest he could finish is five months away, which puts him well past the nine to twelve months typically required for this sex-offender treatment. Delay is occurring because A.H. has not yet disclosed all inappropriate touching, A.H. is not completing therapeutic workbook assignments without prompting, and A.H. continues to touch others inappropriately even while in the treatment program at Pierceton Woods. Barnes also testified the therapeutic team "does not forecast [A.H.] will

significantly benefit from more time [at Pierceton Woods], but we're still willing to continue services." (*Id.* at 16.)

[9] After argument of counsel and comments from A.H. and his parents, the trial court explained:

> I think, at this point – I just don't know that there's – there's not much we can do, and so – um – you know, I've just – we – I've waited, we've – we've – it's – we're past that point. I'm going to – more of a concerning [sic] to me is that you continue to perpetrate new places – new things – here, despite all the counseling, all the therapy. Um – you know, as [the prosecutor] stated, if you do this when you're an adult in a few months here – um – there are criminal consequences, but at this point, I don't know that the Court has any other – any other – uh – options at this point. As [the prosecutor said] – I have three options: continue to do what we're doing, which, so far, I – I think has not been successful; do nothing, get you off the program, which I have concerns about considering the incre – you know, more offenses while you've been in therapy; or Department of Corrections. And I'm – I'm choosing the option of the Department of Corrections today.

(*Id.* at 25.)

[10] As the trial court noted, by the time of the hearing, based on the delinquency adjudication from 2013, A.H. had been in the juvenile system for forty-three months. During that time, the court had moved him to progressively more restrictive placements, and yet A.H., by his own admissions, continued to touch people inappropriately. He had been at Pierceton Woods for eleven months, but was not progressing with sexual offender treatment because he either could

not or would not disclose all the inappropriate touching that had occurred either by or against him, and the treatment team there did not believe A.H. was likely to make more progress. As the goal of the juvenile system is to rehabilitate youth so they do not become criminals as adults, and as A.H. was nearing his eighteenth birthday without any of his placements dissuading him from continuing to touch others inappropriately, we cannot say the court abused its discretion by modifying A.H.'s placement to a more restrictive environment. *See, e.g.*, *D.E.*, 962 N.E.2d at 97 (no abuse of discretion in placement of juvenile at DOC where less-restrictive dispositions had been unsuccessful).

# Conclusion

[11] The evidence in the record demonstrates the trial court was within its discretion to determine the Department of Correction was the least restrictive setting that was appropriate for A.H. Accordingly, we affirm.

[12] Affirmed.

Vaidik, C.J., and Altice, J., concur.